IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Criminal Action No. 11-42-GMS |
| | ) |
| CHRISTOPHER J. TIGANI, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF PLEA AGREEMENT**

Pursuant to discussions between the United States of America, by and through its attorneys, David C. Weiss, Attorney for the United States, Acting Under Authority Conferred By 28 U.S.C. § 515, and Robert F. Kravetz, Assistant United States Attorney for the District of Delaware, and the defendant, Christopher J. Tigani, by and through his attorneys, Edson A. Bostic and Luis A. Ortiz, the following agreement is hereby entered into by the respective parties:

1. The defendant shall waive prosecution by indictment and plead guilty in the United States District Court for the District of Delaware to a four-count Information.

a. Count One of the Information charges the defendant with making and causing to be made illegal corporate contributions to a federal campaign committee, aggregating $25,000 or more during a calendar year, in violation of Title 2, United States Code, Sections 441b(a) and 437g(d)(1)(A), and Title 18, United States Code, Section 2. The maximum penalties for Count One are a term of imprisonment of five years; a fine of not less than 300 percent of the amount involved in the violation, and not more than the greater of $50,000 or 1,000 percent of the amount involved in the violation; and a term of supervised release of three years. The defendant understands that if there were a trial, the Government would have to prove the following elements with respect to Count One of the Information:

(1) that the defendant, an officer of a corporation organized under the laws of the State of Delaware (2) knowingly and willfully (3) violated the Federal Election Campaign Act of 1971 (the "Campaign Act") by making contributions and causing contributions to be made in the names of others to a campaign committee of a candidate for federal office (4) in violation of the prohibition against corporate contributions contained in the Campaign Act (5) aggregating more than $25,000 or more in a calendar year.

b.    Count Two of the Information charges the defendant with making illegal conduit campaign contributions, in violation of Title 2, United States Code, Sections 441f and 437g(d)(1)(A), and Title 18, United States Code, Section 2.  The maximum penalties for Count Two are a term of imprisonment of five years; a fine of not less than 300 percent of the amount involved in the violation and not more than the greater of $50,000 or 1,000 percent of the amount involved in the violation; and a term of supervised release of three years.  The defendant understands that if there were a trial, the Government would have to prove the following elements with respect to Count Two of the Information: (1) that the defendant knowingly and willfully (2) violated the Campaign Act by making contributions and causing contributions to be made in the names of others to a campaign committee of a candidate for federal office (3) aggregating more than $25,000 or more in a calendar year.

c.    Counts Three and Four of the Information charge the defendant with making a materially false statement on an income tax return, in violation of Title 26, United States Code, Section 7206(1).  The maximum penalties for Counts Three and Four are a term of imprisonment of three years, a fine of $100,000.00, one year supervised release, a $100.00 special assessment, and the costs of prosecution, which the parties stipulate to be zero.  The defendant understands that if there were a trial, the Government would have to prove the following elements with respect to Counts Three and Four of

2

the Information: (1) that the defendant made, subscribed and filed an income tax return; (2) that the tax return contained a written declaration that it was made under the penalties of perjury; (3) that the return was false regarding a material matter; (4) that the defendant did not believe the return was true and correct as to that material matter; and (5) that the defendant acted willfully.

2.    In connection with this Memorandum, the defendant admits the following conduct with respect to Counts One and Two and his relevant conduct:

a.    From at least October 2003, and continuing through December 2008, in the District of Delaware and elsewhere, the defendant, the former President of N-K-S Distributors, Inc. ("NKS"), knowingly and willfully caused contributions to be made to campaign committees and political campaigns of numerous candidates for federal and state office in violation of federal and state law. Defendant directly and indirectly solicited numerous individuals, including NKS employees, their spouses, and other associates, to contribute to candidates running for the offices of President of the United States; the United States Senate; Governor of the State of Delaware; Lieutenant Governor of the State of Delaware; Treasurer of the State of Delaware; the Delaware Senate; and the Delaware General Assembly.  Defendant used NKS non-payroll checks to reimburse these third-party conduits for the federal and state campaign contributions they made on behalf of defendant and NKS.  In this respect, defendant was able to bundle campaign contributions in contravention of state and federal contribution limits, and violated the federal ban against direct corporate contributions.

b.    By so doing, defendant further caused campaign committees and political campaigns to submit false reports to the Federal Election Commission ("FEC") and the Delaware Office of the State Election Commissioner ("Delaware Commissioner of Elections"), which indicated that lawful contributions were made by individuals other than defendant and NKS to the respective candidates and

3

committees, when in fact, as defendant well knew, it was defendant and NKS that had made unlawful contributions to these candidates and committees and not the conduits listed in the reports filed with the FEC and the Delaware Commissioner of Elections.

      c.    At the same time, defendant sought to curry favor by making sure that the campaigns knew that the contributions were associated with TIGANI and NKS. Defendant did so by, among other things, using individuals associated with NKS as conduits for contributions; hosting fund-raising events in which he or his associates delivered the contributions; volunteering NKS employees to make fundraising calls on behalf of candidates; allowing a federal campaign to utilize NKS offices to make phone calls for fundraising purposes; providing free alcohol for state fundraising events; and arranging for federal and state candidates and campaign representatives to pick up bundled campaign contributions directly from NKS headquarters.

      d.    During the period that defendant bundled campaign contributions, from 2003 through 2009, defendant and NKS attempted to exert their influence on a number of issues, including their support of the sale of alcohol beverages on Sundays, and their opposition to any increase in alcohol excise taxes and estate taxes. Defendant also sought to utilize his company's influence to obtain two parcels of land in Milford, Delaware, via a sixty-six year lease entered into with the Delaware Department of Transportation ("DelDOT").

      e.    In or around September and August 2004, defendant caused four NKS employees to each contribute $10,000.00 to a Delaware State Committee of a major political party ("THE STATE COMMITTEE"), for a total contribution amount of $40,000.00. Defendant also contributed $10,000.00 to THE STATE COMMITTEE in his own name. Defendant caused NKS to reimburse each employee with a $10,000.00 NKS non-payroll check to cover the cost of the contributions.

4

f.    In or around May 2006, defendant caused two NKS employees to each contribute $500.00 to CAMPAIGN COMMITTEE B, a campaign committee in support of a candidate for the United States Senate. Defendant caused NKS to reimburse each employee with NKS non-payroll checks to cover the cost of the contributions.

g.    In calendar year 2007, defendant caused at least twenty-nine (29) NKS employees, their spouses, and other associates to make approximately forty-one (41) federal campaign contributions to CAMPAIGN COMMITTEE A, a campaign committee in support of a candidate for the Office of President of the United States. In each instance, TIGANI caused NKS to reimburse each employee with NKS non-payroll checks to cover the cost of the contributions. In particular,

•    On or about August 28, 2007, defendant held a "fundraiser" for NKS employees that was ostensibly for the purpose of providing a venue for NKS employees, their spouses, and other associates to make contributions to CAMPAIGN COMMITTEE A. The "fundraiser" was, in fact, a sham. Instead, defendant caused NKS employees to provide approximately seventeen (17) checks to defendant made out to CAMPAIGN COMMITTEE A. In addition, defendant provided two (2) checks to CAMPAIGN COMMITTEE A in his name and the name of a family member.

•    On or about September 6, 2007, defendant caused an NKS employee and his spouse to provide two (2) checks to defendant for CAMPAIGN COMMITTEE A.

•    On or about September 30, 2007, defendant caused eight (8) NKS employees and their spouses to provide nine (9) checks to defendant for CAMPAIGN COMMITTEE A.

5

- In November 2007, defendant caused an NKS employee to provide six (6) checks to defendant for CAMPAIGN COMMITTEE A.

- On or about December 13, 2007, defendant caused six (6) NKS employees and their spouses to provide six (6) checks to defendant for CAMPAIGN COMMITTEE A

The total amount of illegal conduit contributions to CAMPAIGN COMMITTEE A in calendar year 2007 was $70,400.00.

h.   The total amount of illegal conduit contributions to THE STATE COMMITTEE, CAMPAIGN COMMITTEE A, and CAMPAIGN COMMITTEE B, during the course of the scheme, in violation of federal law, was $111,400.00.

i.   Defendant and NKS further provided additional in-kind contributions to federal and state candidates and campaign committees. Defendant directed NKS employees to make fundraising calls using NKS telephones on behalf of candidates during work hours. Defendant also permitted CAMPAIGN COMMITTEE A to utilize the NKS office building after-hours for campaign staffers and volunteers to make fundraising calls on behalf of CAMPAIGN COMMITTEE A. NKS and defendant did not seek, nor were they reimbursed, for permitting CAMPAIGN COMMITTEE A to use the NKS facility and telephone system.

j.   In addition, defendant and NKS provided alcohol to state candidates and campaign committees for fundraising events.  NKS and defendant did not seek, nor were they reimbursed, for providing alcohol to state candidates and campaign committees for fundraising purposes.

k.   Defendant, through the scheme, caused THE STATE COMMITTEE, CAMPAIGN COMMITTEE A, and CAMPAIGN COMMITTEE B, subject to the reporting provisions of the

Campaign Act, to file reports with the FEC which falsely stated that the conduits had made federal campaign contributions, when in truth and in fact each contribution was made by defendant or NKS. Defendant further caused numerous state candidates and campaign committees to file similar false reports with the Delaware Commissioner of Elections.

     l.    Defendant acknowledges that, as a result of his conduct in committing the election offenses, he acted as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a).

     3.    In connection with this Memorandum, the defendant admits the following conduct with respect to Counts Three and Four and his relevant conduct:

     a.    In 2005 and 2006, defendant caused the NKS Controller to create false accounting entries in the NKS books and records in order to artificially increase the funds available in what was referred to as the NKS "Note Payable Account." The Note Payable Account was an officer loan account whereby defendant remitted a portion of his year-end bonus, after taxes, to NKS to help fund operating expenses. NKS, in turn, paid interest on the note. NKS repaid the note by either paying personal expenses for defendant, or by defendant drawing a non-payroll check against the note.

     b.    Defendant's personal spending from the Note Payable account in 2005 and 2006 far exceeded the amount of money he actually lent to NKS, which should have created a negative balance on the note. At defendant's direction, however, the NKS Controller inflated the amount of money that NKS reportedly owed defendant on the note to instead reflect a positive balance in the account.

     c.    Defendant also failed to remit to NKS two checks that he received from third parties that represented payments from the third parties to NKS. The checks totaled $125,000.00 and

$75,000.00, respectively. Defendant also concealed, in a separate NKS expense account, payments that NKS made for personal landscaping expenses at defendant's residence totaling $39,680.00 in 2005 and 2006.

      d.    The false accounting entries and third-party checks permitted defendant to generate income that he failed to report, thus leading him to make false statements on his 2005 and 2006 federal income tax returns

      e.    On or about October 15, 2006, the defendant made, subscribed, and filed a Form 1040 joint tax return. The return contained a statement indicating that the return was made under penalty of perjury. The defendant certified on the tax return that he earned $686,184.00 in calendar year 2005. The defendant knew that the statement was false and that he had under-reported his actual income, which was $988,692.00. The false statement as to the defendant's income was material, that is, it was essential to an accurate determination of his tax liability. The defendant did not believe that his return was true and correct as to the material matter of the income that he earned in calendar year 2005. The defendant agrees further that he acted wilfully, that is, he voluntarily and intentionally violated a known legal duty to file a true and correct federal income tax return. The defendant stipulates that the tax loss to the United States, based on the misrepresentation in his 2005 tax return, was $92,905.00.

      f.    On or about October 19, 2007, the defendant made, subscribed, and filed a Form 1040 joint tax return. The return contained a statement indicating that the return was made under penalty of perjury. The defendant certified on the tax that he earned $919,610.00 in calendar year 2006. The defendant knew that the statement was false and that he had under-reported his actual income, which was $1,657,968.00. The false statement as to the defendant's income was material, that is, it was

8

essential to an accurate determination of his tax liability. The defendant did not believe that his return was true and correct as to the material matter of the income that he earned in calendar year 2006. The defendant agrees further that he acted wilfully, that is, he voluntarily and intentionally violated a known legal duty to file a true and correct federal income tax return. The defendant stipulates that the tax loss to the United States, based on the misrepresentation in his 2006 tax return, was $268,521.00.

      g.   The defendant agrees that the total amount of loss to the United States, i.e., the additional amount of tax due and owing, is $361,426.00.

      4.   Provided that the United States does not learn after the entry of the defendant's guilty plea of conduct by the defendant that is inconsistent with acceptance of responsibility, the United States agrees to recommend a three-level reduction in the defendant's Sentencing Guidelines range pursuant to U.S.S.G. § 3E1.1.

      5.   The defendant understands that the District Court must consider the United States Sentencing Guidelines and the factors set forth in Title 18, United States Code, Section 3553(a) in determining an appropriate sentence. The Court may impose a sentence which exceeds, falls below, or is contained within the sentencing range prescribed by the Sentencing Guidelines. The defendant expressly acknowledges that if the Court imposes a sentence outside the range set forth in the sentencing guidelines, or otherwise different than the defendant expected, or contrary to the recommendation of his attorney or the United States, the defendant will not be allowed to withdraw his guilty plea on that basis.

      6.   The defendant agrees to pay the $400 special assessment the day of sentencing. Should he fail to do so, the defendant agrees to enter voluntarily into the United States Bureau of Prisons' administered program known as the Inmate Financial Responsibility Program, through which the

9

Bureau of Prisons will collect a portion of the defendant's prison salary and apply it on the defendant's behalf to the payment of the outstanding debt ordered.

7.   The defendant agrees to file, not less than one month before sentencing, proper income tax returns or amended income tax returns, Forms 1040, for the years 2005 and 2006. The defendant further agrees to provide the United States Attorney's Office and the United States Probation Office with copies of those returns, to cooperate with any civil tax audit, and to pay back taxes and any interest and penalties that are properly assessed.

8.   In order to facilitate the collection of financial obligations, including the payment of a fine, to be imposed in connection with this prosecution:

a.   The defendant agrees fully to disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party. No later than two weeks following the entry of his guilty plea in this case, the defendant will submit a completed sworn financial statement (the "Financial Statement") to the government, through his undersigned counsel, in a form the government provides and as it directs. No later than two weeks prior to the sentencing hearing in this case, the defendant will provide to the government, through its undersigned counsel, any supporting documentation in the defendant's possession, custody, or control (including banking and brokerage records) for the disclosures set forth in the Financial Statement, as directed by counsel for the government. The defendant also agrees to provide and/or consent to the release of the defendant's federal and state tax returns for the tax years 2004-2009. The defendant promises that his Financial Statement, disclosures, and supporting documentation will be complete, accurate, timely and truthful.

10

b.   Should the defendant fail to provide complete, accurate, timely and truthful financial information as set forth above, the government, in its sole discretion, may deem such conduct inconsistent with the acceptance of responsibility under paragraph 4 of this Agreement and may, in its sole discretion, do any or all of the following: (i) oppose any reduction in the defendant's Offense Level, pursuant to Sentencing Guideline Section 3E1.1(b); (ii) file a motion for an upward variance from the otherwise applicable Sentencing Guideline range; (iii) seek an order compelling production of the financial information; and/or (iv) void this Agreement.

9.   The defendant knows that he has, and voluntarily and expressly waives, the right to file any appeal, including, but not limited to, an appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, except that the defendant reserves his right to appeal only if (1) the government appeals from the sentence, (2) the defendant's sentence exceeds the statutory maximum for the offense set forth in the United States Code, or (3) the sentence unreasonably exceeds the Sentencing Guidelines range determined by the District Court in applying the United States Sentencing Guidelines.

10.   The United States Attorney reserves the right to defend any ruling of the District Court should there be an appeal from this case.

11.   It is further agreed by the undersigned parties that this Memorandum supersedes all prior promises, representations, and statements of the parties; that this Memorandum may be modified only in a written document signed by all the parties; and, that any and all promises,

11

representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever.

DAVID C. WEISS
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

Edson A. Bostic, Esq.
Luis A. Ortiz, Esq.
Attorneys for Defendant

By: Robert F. Kravetz
    Assistant United States Attorney

Christopher J. Tigani
Defendant

Dated: June 9, 2011

**AND NOW**, this ___9th___ day of _____June_____ 2011, the foregoing

Memorandum of Plea Agreement is hereby (accepted) (rejected) by this Court.

Hon. Gregory M. Sleet
Chief United States District Judge

12